IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., AS BROADCAST LICENSEE OF THE SEPTEMBER 14, 2013 "THE ONE" FLOYD MAYWEATHER, JR. V. SAUL ALVAREZ WBC MIDDLEWEIGHT CHAMPIONSHIP FIGHT PROGRAM;<br><br>*Plaintiff*,<br><br>vs.<br><br>LEE VALLEJO, A/K/A LEE SANMIGUEL VALLEJO, INDIVIDUALLY, AND D/B/A LEE'S STEAKHOUSE A/K/A LEE'S STEAKHOUSE & SPORTS BAR;<br><br>*Defendant*. | § § § § § § § § § § § § § § § § § § § | 5-16-CV-00735-FB-RBF |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Final Summary Judgment filed by Plaintiff J&J Sports Productions Inc. *See* Dkt. No. 13. This case was referred to the undersigned for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1 to Appendix C of the Local Rules for the United States District Court for the Western District of Texas. The case arises under the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605 (the "FCA"), which provides the District Court with federal question jurisdiction, *see* 28 U.S.C. § 1331. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned recommends that the Motion for Final Summary Judgment, Dkt. No. 13, be **GRANTED IN PART AND DENIED IN PART** as specified below.

1

I. **Factual and Procedural Background**

J&J Sports bought the exclusive license to exhibit and sublicense at commercial establishments the closed-circuit telecast of the September 14, 2013 Floyd Mayweather v. Saul Alvarez Fight Program, which also included an accompanying undercard and preliminary matches. *See* Ex. A to Mot. ("Riley Aff.") ¶ 4; Ex. A-1. As the license holder, J&J Sports only authorized exhibition of the closed-circuit broadcast of the program in commercial establishments with which it had entered into a valid license agreement. Riley Aff. ¶¶ 5-7. To safeguard against unauthorized interception or receipt of the fight telecast, transmission of the fight "was electronically coded or 'scrambled'" and only establishments that contracted with J&J Sports were provided the capability to receive and decode the signal. *Id.* ¶ 6. On September 14, 2013, an auditor for J&J Sports observed the preliminary rounds of the fight being broadcast on two flat-screen televisions to approximately 45 to 50 patrons at Lee's Steakhouse & Sports Bar. *Id.* ¶¶ 3, 8 and Ex. A-2 ("Castillo Aff.").

On July 20, 2016, J&J Sports brought suit against Defendant Lee Vallejo a/k/a Lee SanMiguel Vallejo, individually, and d/b/a Lee's Steakhouse a/k/a Lee's Steakhouse & Sports Bar, alleging that Vallejo illegally intercepted and exhibited the fight at Lee's Steakhouse on September 14 in violation of §§ 553 or 605 of the FCA. *See* Compl. On December 7, 2016, Vallejo, proceeding pro se, filed an original answer, admitting ownership of Lee's Steakhouse a/k/a Lee's and to receiving transmission of the fight at his establishment. *See* Answ. ¶¶ 2, 11, 16. Vallejo, however, denies liability. He contends the communication was not unauthorized or exhibited to his patrons. *Id.* ¶ 11. According to Vallejo's answer, he purchased the fight from Dish Network for his family's private viewing, and the fight did not begin until 11 pm, which

was two hours after his establishment closed for business that night. *Id.* ¶ 16. Accordingly, Vallejo asserts in his answer that any alleged violation was unintentional. *Id.*

On November 9, 2017, J&J Sports filed the instant Motion for Summary Judgment. Dkt. No. 13. By local rule, Vallejo's response to the Motion was due by November 23, 2017. He failed to timely respond. Nevertheless, in light of Vallejo's pro se status, the undersigned extended Vallejo's response deadline and warned him of the consequences of failing to respond to a motion for summary judgment. Dkt. No. 15. He nonetheless failed to respond by the extended deadline.

## II. Legal Standards

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating

that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

Although Vallejo has failed to respond to J&J Sports' motion, summary judgment can only be granted if J&J has satisfied its initial burden of establishing, through competent summary judgment evidence, that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (explaining that a moving party must meet its initial summary judgment burden "regardless of the nonmovant's response").

J&J Sports includes the following summary judgment evidence with its motion: (1) affidavits from Thomas P. Riley and David M. Diaz, attorneys for J&J Sports, Exs. A and B to Mot.; (2) the Closed Circuit Television License Agreement for the fight entered into between J&J Sports and Golden Boy Promotions, LLC, Ex. A-1 to Mot.; (3) the affidavit of its auditor Wanda Castillo, Ex. A-2 to Mot.; (4) the Rate Card for the event, Ex. A-3 to Mot.; and (5) requests for admissions served on Vallejo on September 29, 2017, Exs. C and D to Mot.

In its motion, J&J Sports urges that the matters in its September 29 requests for admissions should be deemed admitted pursuant to Rule 36 because Vallejo failed to timely respond. J&J Sports is incorrect. It has provided evidence only that it *served* these requests on Vallejo. Exs. C and D to Mot. Absent competent summary judgment evidence establishing Vallejo's non-response, J&J Sports' unsworn statement in its motion to this effect is insufficient to deem these facts admitted. *See, e.g.*, *Wells Fargo Bank, N.A. v. Southgate Bus. Ctr., LLC*, No.

1:11-CV-2176, 2012 WL 12887934, at *3 (N.D. Ohio Sept. 21, 2012) (refusing to consider matters deemed admitted where party failed to submit an affidavit or other evidence establishing that an opposing party failed to respond within the relevant time period) (citing Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the asserting by . . . citing to affidavits or declarations.")). Accordingly, the undersigned will not consider these matters admitted when evaluating the merits of J&J Sports' motion. Nevertheless, as explained below, J&J Sports has submitted enough other competent summary judgment evidence to establish liability as a matter of law on its § 605 claim.

### III. Analysis

J&J Sports only seeks summary judgment on its claim under § 605 of the FCA. *See* Mot. at 7. Although J&J Sports cites FCA § 553 in its Complaint, it does so in the context of raising a claim for relief under whichever of either § 605 or § 553 properly applies, but not both. It is clear that only § 605 could apply here because § 605 applies to the unauthorized interception of signals through radio or satellite (but not cable) communications. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014). Section 553 applies in the opposite scenario, which is not at issue here. *See* Riley Aff. ¶ 6 ("The transmission of the Event originated via satellite."). The undersigned, therefore, construes the present motion as confirming that J&J Sports only raises a claim for relief under § 605. As part of the requested judgment, J&J Sports seeks an award of: (1) statutory damages in the amount of $10,000, *see* 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $50,000 for Vallejo's alleged willful acts, *see* 47 U.S.C. § 605(e)(3)(C)(ii); (3) attorneys' fees in the amount of one-third of J&J Sports' total recovery or, in the alternative, a lodestar award of $2,000, along with attorney's fees for post-trial and appellate services; and (4) costs and post-judgment interest.

5

For the reasons discussed below, J&J Sports has submitted sufficient competent summary judgment evidence to establish liability on its § 605 claim but the evidence only supports awarding a portion of the damages requested.

*Liability*. Section 605 of the FCA prohibits an unauthorized person from "receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Section 605 further prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission. *Id.* The FCA affords a private right of action to "[a]ny person aggrieved by any violation of" the Act. 47 U.S.C. § 605(e)(3)(A). Further, "[t]he FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *Joe Hand Promotions, Inc. v. Macias*, No. H–11–1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012).

Here, there is uncontroverted evidence that on September 14, 2013, at least one preliminary bout to the fight (a fight between Pablo Cesar Cano and Ashley Theophane) was broadcast to patrons on two flat-screen televisions at Lee's Steakhouse & Sports Bar. *See* Castillo Aff.; Riley Aff. ¶ 3.[1] It is also uncontested that Lee's Steakhouse & Sports Bar did not pay J&J Sports a sublicense fee for the rights to commercially broadcast the fight. Riley Aff. ¶¶ 7- 9. Finally, Vallejo has judicially admitted that he owns Lee's Steakhouse & Sports Bar and has a direct financial interest in its activities. *See* Answ. ¶ 2.

---

[1] Although the auditor refers to the main fight as the "Mayweather vs. Canelo" event in her affidavit, it appears that Alvarez goes by the name of Canelo. *See* Rate Card for the fight, attached as Exhibit A-3 to Riley's affidavit.

6

Vallejo further admits in his unsworn answer to broadcasting the fight at his establishment on the night in question but contends that he is not liable because his acts were not intentional; the intent was for personal not commercial use. *Id.* ¶ 16. Even assuming solely for the purposes of this report and recommendation that the statements in Vallejo's answer were submitted in the form of competent summary judgment evidence, he still could not overcome liability. The summary judgment evidence establishes that J&J Sports purchased the main fight, as well as accompanying undercard and preliminary matches. *See* Ex. A-1. According to the auditor, at least one preliminary bout was commercially broadcast to patrons in Vallejo's establishment at 8:30 pm, 30 minutes before Vallejo's establishment allegedly closed for the night. *See* Castillo Aff.; *see also* Riley Aff. ¶¶ 3, 8. Because § 605 is a strict liability statute, Vallejo's intent to only privately view the fight is irrelevant to liability. *See G&G Closed Circuit Events, LLC v. Cisneros*, No. 5:15-CV-302-DAE, 2016 WL 1322485, at *2 (W.D. Tex. Apr. 1, 2016) (explaining that the broadcast of a licensed event at a commercial establishment using a residential license violates § 605) (citing *Joe Hand Promotions, Inc. v. Ol'River Hideaway, LLC*, NO. 5:15-CV-187-DAE, 2016 WL 590251, at * 3 (W.D. Tex. Feb. 11, 2016) and *Garden City Boxing Club, Inc. v. Vinson*, No. 3:03-CV-0700-BD(P), 2003 WL 22077958, at * 2 (N.D. Tex. May 24, 2003)). Accordingly, there is no genuine dispute over any material fact, and summary judgment for J&J Sports is warranted as to liability against Vallejo under § 605.

*Statutory Damages of $4,000.* Under the FCA, an aggrieved party may be awarded either: (1) "the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages," 47 U.S.C. § 605(e)(3)(C)(i)(I), or (2) statutory damages for each violation "in the sum of not less than $1,000 or more than $10,000, as the court considers just," 47 U.S.C.

§ 605(e)(3)(C)(i)(II). J&J Sports seeks $10,000 in statutory damages—the maximum amount allowable—asserting that this amount is fair and reasonable given the benefits Vallejo received and the damages J&J Sports suffers to its customer base and good will when an establishment such as Lee's Steakhouse offers stolen programming to its patrons. *See* Mot. at 8-11; Riley Aff. ¶¶ 12-15.

In the Western District of Texas, prevailing FCA plaintiffs are most often awarded a flat sum of statutory damages. The sum is derived from the costs the defendant would have incurred to purchase the rights to the broadcast, plus an additional amount sufficient to deter future violations and account for additional damages incurred by the plaintiff, such as the potential erosion of the plaintiff's customer base and profits made by the defendant in selling food and drinks to patrons.[2]

The record and an affidavit from J&J Sports' counsel Thomas P. Riley support an award for statutory damages in excess of the sublicense fee. *See* Riley Aff. According to Riley, had Vallejo lawfully purchased the rights to show the fight he would have incurred a sublicense fee based on the capacity of his establishment. *See id.* ¶ 7 (incorporating by reference the Rate Card for the fight). According to the auditor, the establishment has a capacity of approximately 125 people, which would have resulted in a sublicense fee of $2,700. In this district, to reach a "reasonable award" that takes into account direct and indirect losses suffered as well as the need to deter future violations it is common to "treble what would have been the cost had Defendants followed the law." *Chucho's Mexican Rest.*, 2015 WL 7301183, at *3. Sometimes lesser

---

[2] *See e.g.*, *J&J Sports Prods., Inc. v. Bandera Cowboy Bar LLC*, No. 5:15-CV-352-DAE, 2016 WL 2349123, at *5 (W.D. Tex. May 2, 2016); *G&G Closed Circuit Events, LLC*, 2016 WL 1322485, at *3; *Joe Hand Promotions, Inc. v. Ol' River Hideaway, LLC*, No. 5:15-CV-187-DAE, 2016 WL 590251, at *3 (W.D. Tex. Feb. 11, 2016); *J&J Sports Prods., Inc. v. Chucho's Mexican Rest., Inc.*, No. 1-15-CV-361 RP, 2015 WL 7301183, at *3 (W.D. Tex. Nov. 18, 2015); *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008).

amounts can be sufficient to deter the unlawful conduct under the circumstances. *See, e.g., Joe Hand Promotions, Inc. v. RLPR Mgmt., LLC*, 2015 WL 539649, at *5 (W.D. La. Feb. 6, 2015) (finding an award of twice the license fee sufficient to deter conduct); *J&J Productions, Inc. v. Little Napoli, Inc*., No. H–13–1237, 2014 WL 3667903, at *3 (awarding one and one-half times license fee as statutory damages); *G&G Closed Circuit*, 2016 WL 1322485, at *2 (finding an award of $2,200 in addition to the $800 license fee "sufficient and reasonable to deter future violations"); *Bandera Cowboy Bar*, 2016 WL 2349123, at *5 (awarding plaintiff $3,500 in statutory damages, which consisted of the $2,200 sublicense fee plus an additional $1,300).

The circumstances of this case merit a lesser award. The only evidence in the record is that Vallejo broadcast one preliminary bout of the event to his patrons. There is no evidence that he profited from the broadcast through food or drink sales. And the only evidence in support of an award of statutory damages here is Riley's affidavit attesting to the erosion to J&J Sports' customer base and good will whenever a violation is committed. Accordingly, the undersigned concludes that $4,000 in statutory damages—which accounts for J&J Sports' direct loss of $2,700 plus an additional $1,300—is an appropriate award of statutory damages under these circumstances. *See Bandera Cowboy Bar LLC*, 2016 WL 2349123, at *5 (awarding plaintiff $3,500 in statutory damages where plaintiff charged a license fee of $2,200 to comparably sized commercial establishments and plaintiff submitted evidence that defendant's actions eroded its customer base).

*No Evidence of Additional Damages*. FCA violations "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," authorize "the court in its discretion [to] increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). J&J Sports

maintains Vallejo acted "willfully" as he could not have "innocently" accessed the broadcast; the satellite signal was "scrambled" and was not available to the general public. *See* Mot. at 12; Riley Aff. ¶¶ 6-10. Vallejo's violation, according to J&J Sports' would have required the use of specialized equipment such as an unauthorized decoder or satellite access card or required J&J Sports to authorize a satellite provider to unscramble the reception. Riley Aff. ¶¶ 9-10. But there is one other method that J&J Sports does not account for and one Vallejo admits to using—he purchased a residential package through Dish Network. Answ. ¶ 16. This is sufficient to support a finding of willfulness. *See G&G Closed Circuit*, 2016 WL 1322485, at *3 ("To divert a residential cable package into a commercial establishment is a deliberate act that evinces willfulness"); *J&J Sports Prods., Inc. v. Orellana*, No. CIV.A. H-11-0574, 2012 WL 3155728, at *4 (S.D. Tex. Aug. 2, 2012) (registering a commercial establishment as a residential site is evidence of willfulness and may support an award of enhanced damages) (quoting *Joe Hand Promotions v. Malespin*, No. 99 Civ. 8942 (WHP)(KNF), 2001 U.S. Dist. LEXIS 2037, *9-10 (S.D.N.Y. Feb. 27, 2001)).

But to be entitled to additional damages, a violator must have also committed the violation for purposes of direct or indirect commercial advantage or private financial gain. To determine willfulness for commercial gain, courts look for evidence of a cover charge, increased prices for food and drinks, an increased number of patrons attending the establishment, and advertisements. *See Zuffa, LLC v. Trappey*, No. CIV.A. 11-0006, 2012 WL 1014690, at *5 (W.D. La. Mar. 22, 2012). No such evidence is present in this record. According to the auditor, no cover charge was assessed; she categorizes Vallejo's establishment as a "family restaurant." Ex. A-2. There is also no evidence of advertisements, that Vallejo charged an increased price for food of drinks (or even offered alcoholic beverages for sale), or that the event drew a larger than

10

normal crowd. *C.f.*, *Chucho's Mexican Rest.*, 2015 WL 7301183, at *4 (finding commercial motive where defendant showed the event to its patrons while offering alcoholic beverages for sale); *J&J Sports Prods., Inc. v. Santos*, No. DR-17-CV-0028-AM-CW, 2018 WL 1887294, at *5 (W.D. Tex. Feb. 20, 2018) ("By blatantly advertising a free viewing of a program that would otherwise cost money if viewed privately in one's home, Defendants intended to entice patrons into their lounge to create business or offer patrons incentives not to leave (and spend more money).") Accordingly, the summary judgment record does not support an award of additional damages here.

*Attorneys' fees.* The FCA provides that courts "shall direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Accordingly, an award of attorneys' fees is mandatory for a prevailing party in a FCA case, although the amount awarded must be reasonable. *Id.*; *see also J&J Sports Prods., Inc. v. Rivera*, No. EP-14-CV-00343-KC, 2015 WL 1137473, at *6 (W.D. Tex. Mar. 12, 2015).

Here, a fair and equitable award of fees is derived from the lodestar rate, *i.e.*, the hours the attorneys actually expended times a reasonable hourly rate. *See, e.g.*, *Chucho's Mexican Rest.*, 2015 WL 7301183, at *5 (declining one-third contingent fee requested and instead awarding fees according to lodestar method); *J&J Sports Productions v. Rivera*, No. CIV.A. H-13-902, 2014 WL 3533472, at *3 (S.D. Tex. Jul. 14, 2014) (finding it "more equitable" to apply the lodestar as opposed to one-third contingency fee); *J&J Sports Productions, Inc. v. Rodriguez*, No. SA-13-CA-342-XR, 2013 WL 3967833, at *2 (W.D. Tex. Jul. 31, 2013) (same). J&J Sports' attorney David M. Diaz details in his affidavit his experience, that his firm provides an hourly rate of $250 for similar cases, and notes that he and other attorneys at his firm have expended or

will expend a minimum of eight hours on this litigation through the preparation of the motion for summary judgment. *See* Diaz Aff. Nothing in Diaz's Affidavit justifies departing from the lodestar rate based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Trimming the hourly rate to a more modest $200 per hour for this rather straightforward action and taking judicial notice of the rates charged in this locality for this type of litigation, the undersigned concludes that an award of $1,600 in attorneys' fees is reasonable under the circumstances of this case.

J&J Sports may request a fees award for post-trial and appellate services when, and if, any such fees are actually incurred. *See Rivera,* 2014 WL 3533472, at *3 (rejecting as "speculative" and "premature" plaintiff's request for an award of fees in the event that post-trial, pre-appeal, and appellate services are required); *Kingvision Pay–Per–View, Ltd. v. Guerrero*, No. 3:08–CV–1970–G (BF), 2009 WL 1973285, at *5 (N.D. Tex. Jul. 7, 2009) (holding that a plaintiff may apply for a contingent award for post-trial services if and when such fees are incurred).

Finally, J&J Sports should be awarded its reasonable costs if it timely files a bill of costs supported by appropriate documentation and in the form required by the Clerk of the Court. *See* Local Rule CV-54.

### IV. Conclusion

Accordingly, having considered Plaintiff J&J Sports' motion, the case file, and the lack of response from Vallejo, the undersigned recommends that Plaintiff's Motion for Final Summary Judgment, Dkt. No. 13, be **GRANTED IN PART AND DENIED IN PART** as to Plaintiff's request for damages, fees, and costs, as follows: (1) $4,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) $0 in additional damages pursuant to 47 U.S.C. §

605(e)(3)(C)(ii); (3) $1,600 in reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii); and (4) costs in an amount to be determined pursuant to the procedure specified in Western District of Texas Local Rule CV-54. Defendant should also pay post-judgment interest, to be calculated and compounded pursuant to 28 U.S.C. § 1961, until the judgment is paid in full.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and

recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 9th day of August, 2018.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE